## BROWN v. STEWART.

(Filed March 8, 1904).

1. STATUTES—*General Assembly—Journals—Const. N. C., Art. II, sec. 14; Acts (Private) 1903, ch. 48.*

> The statute herein set out was passed in accordance with Art. II, sec. 14, of the Constitution, requiring certain bills to be read three times in each house.

ACTION by George H. Brown and others against E. T. Stewart, as Mayor of the town of Washington and others, heard by *Judge W. A. Hoke,* at February Term, 1904, of the Superior Court of BEAUFORT County.

This is a controversy submitted to the Court without action, pursuant to section 567 of The Code. The facts upon which the parties desire the decision of the Court are set forth with care and clearness. The affidavit is in strict conformity with the statute.

The plaintiffs are creditors of the' defendant the city of Washington, and hold the bonds and other evidences of indebtedness referred to in the act of the General Assembly (chapter 48, Private Laws 1903). Said bonds, etc., were issued for money borrowed for necessary expenses incurred in repairing streets, public buildings, etc. It is admitted that said bonds, etc., constitute valid and binding obligations of said city. The General Assembly, at its session of 1903, enacted chapter 48 of the Private Laws of 1903, said act

being ratified February 9th. The said act recites that the
city is indebted in the sum of thirty-two thousand dollars,
said debt being contracted for the purposes therein set forth
and evidenced as aforesaid; and is entitled "An act to au-
thorize the Board of Commissioners of the town of Washing-
ton, North Carolina, to issue bonds to pay its existing in-
debtedness." The Board of Commissioners of said town
are, by said act, authorized to issue bonds to the amount of
thirty-two thousand dollars, bearing interest at the rate of
five per cent. and payable semi-annually. The denomina-
tion of the bonds, the mode of authentication, and manner of
sale, etc., are fully set forth therein. It is provided that
the proceeds of the said bonds shall be applied exclusively
to the payment of the aforesaid indebtedness. Section 2 of
the act provides that "The principal of all said bonds shall
be due and payable on the first of May, 1933, but it shall
be the duty of the Board of Commissioners of said town to
pay two thousand dollars of the principal of said entire bond
issue on the first of May, 1918, and two thousand dollars
on the first day of May of each year thereafter until the
entire principal of each bond is paid." Provision is made
for selecting by lot the bonds to be paid at the end of each
year. By section 4 it is provided that the Board of Com-
missioners shall levy an annual special tax sufficient to pay
the interest on said bonds, and "shall also levy during the
year 1917, and each year thereafter, a special tax to produce
an annual sum sufficient to pay and discharge two thousand
dollars of the principal of said bond as each installment falls
due under the provision of this act." Said act was passed
in strict conformity to the provisions of Article II, section
14, of the Constitution. The General Assembly, at the same
session, enacted chapter 170 of the Private Laws of 1903,
being entitled "An act to incorporate the city of Washing-
ton." Said act was introduced into the House of Represen-

tatives and read on three several days, passing its several readings; upon each reading the yeas and nays were called and entered on the Journal in strict accordance with section 14, Article II, of the Constitution. The bill, after having passed the House, was sent to the Senate, duly read and passed upon its first reading without amendment. On a subsequent day sections 84, 85 and 86 were offered as an amendment, adopted by the Senate, and made a part of the bill. After being so amended, the bill passed upon its second and third readings, upon two several days, upon a call of the yeas and nays and recorded on the Journal in accordance with the constitutional requirement. Section 85 of chapter 170, Private Laws of 1903, is as follows: "The several sections and provisions of an act of the General Assembly ratified February 9, 1903, entitled 'An act to authorize the Board of Commissioners of the town of Washington, North Carolina, to issue bonds to pay its existing indebtedness,' are hereby made a part of this act, with the following amendments, viz.: Where figures or words occur in section two of said act of February 9, 1903, they shall be changed to 1938, and where words or figures 1918 occur in said section of said act they shall be changed so as to read 1923, and where words or figures 1917 occur in the fourth section of said act of February 9, 1903, they shall be changed so as to read 1922. All the bonds issued in pursuance of this act or the act ratified February 9, 1903, shall be exempt from municipal taxation by said city, and all shall be payable in the gold coin of the United States, and all the coupons receivable in payment of taxes by said city and the interest upon all shall be payable semi-annually upon the first days of November and May of each year at such place as the Board of Aldermen may designate." The said bill after being passed by the Senate, as aforesaid, was returned to the House. The Senate amendment was concurred in and the bill as amended

duly read and passed on two several days, the yeas and nays being taken and recorded in accordance with the Constitution, section 14, Article II. Both of said acts were duly enrolled, ratified and published by the Secretary of State, as provided by law.

It is admitted that the indebtedness, for the payment of which said bonds were directed to be issued, is past due and unpaid.

The defendants duly advertised said bonds for sale in accordance with chapter 48 of the Private Laws of 1903, as amended by section 85, chapter 170. They were bid off by one Stafford, who declined to take and pay for them, assigning as reason therefor that section 85 of chapter 170 was not read three times in the Senate. The plaintiffs insist that it is the duty of the defendants to again offer said bonds for sale, as required by said acts of the General Assembly. His Honor, upon the foregoing agreed state of facts, was of the opinion that chapter 170 of the Private Laws of 1903, was duly and regularly enacted into law and ratified on February 27, 1903, in accordance with Article II, section 14, of the Constitution. That the amendment thereto, adopted on and before the second reading of the bill, and the bill so amended having passed its several readings in accordance with the Constitution, said amendments constituted a part of said act as passed and ratified. That the effect of the enactment of section 85, chapter 170, was to amend chapter 48 of the Private Laws of 1903. It was thereupon adjudged that the defendants proceed to again offer the bonds for sale and issue same in manner and form as set out in chapter 48 as amended by section 85 of chapter 170 and apply the proceeds as therein directed. From this judgment defendants appealed.

*S. B. Shepherd,* for the plaintiffs.
*S. G. Bragaw,* for the defendants.

BROWN v. STEWART.

CONNOR, J.   We do not entertain any doubt of the cor-
rectness of the conclusion reached and the judgment rendered
by his Honor.   The Board of Commissioners of the town of
Washington were empowered by chapter 48, Acts (Private)
1903, to issue the bonds for the purpose of paying a valid,
outstanding and past-due indebtedness of said town as therein
stated. This act is full and complete in its provisions. Hav-
ing been enacted in strict conformity to the constitutional
requirement, as uniformly construed by this Court, there
can be no possible doubt of its validity.   We are unable to
perceive how by any rule of construction the provisions of
section 85 of chapter 170 can be said to "pledge the faith"
of the town, or "impose any tax."   It will be observed that
by chapter 48, section 2, the bonds were to mature May 1,
1933.   This date is changed to 1988.   Two thousand dol-
lars of the bonds were to be paid in 1918, the date is changed
to 1923.   The first annual tax to pay the first installment is
directed to be levied in 1917, the date is changed to 1922.
The effect of the amendment is to postpone the date of ma-
turity five years, and the other dates are so changed that the
harmony of the original scheme is preserved.   Upon the
principle announced in *Glenn v. Wray*, 126 N. C., 730, we
can see no reason why the bill as amended was not passed
in the Senate in conformity with the Constitution and the
well-known rules of procedure in both Houses of the Gen-
eral Assembly of this State.   We can see no reason why the
amendment, imposing no tax, creating no debt nor increasing
the amount of the bonds or the rate of interest thereon, could
not be adopted by the Senate and incorporated into the origi-
nal bill on, and before, its second reading.   Certainly this
ruling in no manner conflicts with what is said in *Glenn v.
Wray, supra*.   His Honor was of the opinion that the effect
of section 85 of chapter 170 was to amend chapter 48.   Much
could be said in support of the view that chapter 48 as

BROWN *v.* STEWART.

amended was incorporated into and made a part of chapter 170. It is not very material which view we take, as the result will be the same. The judgment of his Honor is affirmed. To prevent any possible misconception, we think it proper to say that we have decided this case upon "an agreed state of facts" in a controversy without action. We do not pass upon the admissibility of the Journals, or other evidence, for the purpose of invalidating or affecting the integrity of the certificates of the presiding officers that said act was "In the General Assembly read three times." It does not appear that there was any objection made to the evidence in *Glenn v. Wray, supra.* The Court has held in *Bank v. Commissioners,* 119 N. C., 214, and several recent cases that the Journal is competent evidence to show whether the provisions of section 14, Article II, of the Constitution have been complied with. The writer of this opinion thinks it is not improper to say, speaking for himself, that, unless compelled by overwhelming and controlling authority, he would hold that the principle announced in *Broadnax v. Groom,* 64 N. C., 244, is to be rigidly adhered to, save in the clearly defined exception made in *Bank v. Commissioners, supra.*

The judgment of his Honor is
Affirmed.