STATE EX REL C. S. O'NEAL, J. H. SWINDELL, O. B. GIBBS AND C. F. GIBBS v. T. H. JENNETTE, R. D. HARRIS AND L. B. WATSON.

(Filed 16 September, 1925.)

**1. Counties—Government—Principal and Agent.**

Counties are governmental agencies of the State, and where there is no constitutional inhibition, are subject to the unlimited control of the Legislature as to the manner of their exercising their proper functions or the selection of agencies therein to be employed for the purpose.

**2. Same—Statutes—Legislative Powers—Vested Rights.**

The commissioners of a county duly elected and inducted have no vested right in their offices, and the same may be abolished by statute, and other instrumentalities for the administration of the county government substituted therefor, when not inhibited by our Constitution.

**3. Same—Constitutional Law.**

Where a county has been given the full general authority for levying taxes and pledging the faith and credit of the county under our Constitution, the Legislature has the power and authority to change the agencies by which the proper execution of this power shall be exercised without further observing the constitutional requirement that a statute of this character shall be passed upon its various readings in each branch of the Legislature upon a roll-call requiring the recording of the "aye" and "no" vote of the members, etc. Const., Art. II, sec. 14.

APPEAL by defendants from a judgment of *Bond, J.,* 17 August, 1925, overruling a demurrer to the complaint. From HYDE.

The plaintiffs alleged that in the general election of 1924 they and the defendant Watson had been elected commissioners of Hyde County and, having duly qualified as such, were performing their official duties at the institution of the action; that the General Assembly at the session of 1925 attempted to abolish the board of county commissioners of Hyde County and to provide in lieu thereof a board of managers for the county; that said act, among other things, attempted to vest in the board of managers all authority, responsibilities, and liabilities which had been held and assumed by the board of county commissioners of Hyde County, among which were the levying of taxes and the pledging of the credit of the county for the necessary expenses thereof; that the said law had not been read three separate times, on separate days, in each house of the General Assembly, and the said board of county managers, even though it be lawfully constituted in other respects, is without authority to levy taxes for county purposes or to pledge the credit of the county, if the same should be necessary in the management and control of the county government; that the act is contrary to the Constitution of North Carolina in that it attempts to abolish the office of county commissioners, which is a constitutional office, and to

establish in place thereof a board of managers for the county; that the defendants have attempted to qualify as such board of managers and to usurp the rights and responsibilities of the plaintiffs and have assumed to conduct the public business of the county; that they intend also to levy taxes for the fiscal year 1925-'26 at the times fixed by law for such purpose, and, if necessary or expedient, to pledge the credit of the county for the government thereof, which, being contrary to law and in breach of plaintiffs' rights, will result in confusion; and, finally, that the action is prosecuted with the consent of the Attorney-General. The plaintiffs pray that they be declared the duly constituted board of commissioners and entitled to perform the duties of their office; that the defendants be declared not to be the board of managers and that they be enjoined from acting as such and from interfering with the plaintiffs' control of the affairs of the county.

The defendants demurred to the complaint on the following grounds:

(1) The act referred to in section 2 of the complaint was duly and regularly passed in accordance with the Constitution of the State of North Carolina, and that it is not such an act as comes within the provision of Article II, sec. 14, of the Constitution of North Carolina.

(2) That the control and management of the county officers, the number of members of the governing board and their duties, with respect to county management, are within the control of the Legislature, and that the Legislature is at liberty to abolish, create, modify, or enlarge their duties at any time, and that it is within the province of the Legislature to determine whether a county shall be managed by a board of managers or a board of commissioners; that it is within the province of the Legislature to determine what duties shall be performed by each member of said board or commission and the term of office that each shall serve.

(3) That at the time of the institution of this action no taxes had been levied, nor any indebtedness created, and that the State of North Carolina, acting through its Legislature, has full power and authority to determine the manner of government of its political subdivisions.

(4) That there is now no such office as county commissioners in the county of Hyde and no office to which the plaintiffs could be inducted.

The demurrer was overruled and the defendants excepted and appealed.

Sections 1 and 2 of the act in question (ch. 516, Public-Local Laws of 1925) are as follows:

"Section 1. That the board of commissioners of Hyde County is hereby abolished, effective 15 March, 1925, and the term of office of each member of said board as it is now constituted shall expire on said date.

7—190

"Sec. 2. There is hereby created a board of managers for the county of Hyde to be composed of three members, hereinafter named, who shall qualify in the same manner that members of the board of commissioners are by law required to qualify, who are hereby invested with all the rights, powers, authorities, and duties conferred by law upon the boards of county commissioners of the several counties of the State, and which may hereafter be conferred by laws which may be enacted. Said board of managers are likewise charged with all liabilities and duties now imposed upon county commissioners, and shall perform all duties prescribed by law, and shall act and serve in lieu of the board of county commissioners to whose duties and liabilities it shall succeed. In addition to the powers and duties now prescribed by law, the said board of managers is hereby authorized and empowered to appoint a county manager, who may be a member of said board of county managers, with such duties and to serve under such rules and regulations as the board may prescribe.

"The said county manager may serve as tax supervisor, or in such other capacity as the board of managers may designate, and he is hereby authorized to audit the affairs of the county and to do and perform any and all other acts that pertain to county government as the board may direct. The compensation of the county manager shall be fixed by the board of county managers, and shall be paid out of the general county funds in monthly payments."

Section 3 provides that all officers of Hyde County shall make reports to the board of county managers as often as they may be directed to do so, to submit records and furnish all information requested by the managers, who are empowered to audit the accounts of the county officers.

Section 4 appoints the defendants a board of managers to serve for terms of two, four and six years, respectively, and provides that every two years one member of the board be elected for a term of six years, the defendants to qualify on 15 March, 1925, and provides also for filling vacancies in the office.

Section 5 repeals all conflicting clauses.

The act was not passed in compliance with Article II, sec. 14, of the Constitution.

*W. L. Spencer, S. S. Mann, and H. C. Carter for plaintiffs.*
*Small, MacLean & Rodman and Carroll B. Spencer for defendants.*

ADAMS, J. Counties are civil and political divisions of the State created and organized for the more convenient administration of government, and are invested with such powers as are essential to the welfare and protection of the public within their boundaries. They are not

regarded as municipal corporations in the strict legal sense (although referred to under this title in Article VII of the Constitution), but as instrumentalities of the State; and in the exercise of ordinary governmental functions they are subject practically to the unlimited control of the Legislature, unless restricted by constitutional provision. *Mills v. Williams,* 33 N. C., 558; *White v. Comrs.,* 90 N. C., 437; *Comrs. v. Comrs.,* 95 N. C., 190; *Comrs. v. Comrs.,* 157 N. C., 515.

With respect to the institutions and finances of a county, Article VII has the following provisions:

Section 1. In each county there shall be elected biennially by the qualified voters thereof, as provided for the election of members of the General Assembly, the following officers: a treasurer, register of deeds, surveyor and five commissioners.

Sec. 2. It shall be the duty of the commissioners to exercise a general supervision and control of the penal and charitable institutions, schools, roads, bridges, levying of taxes and finances of the county, as may be prescribed by law. The register of deeds shall be, ex-officio, clerk of the board of commissioners.

Sec. 14. The General Assembly shall have full power by statute to modify, change, or abrogate any and all of the provisions of this article, and substitute others in their place, except sections 7, 9, and 13.

Instances in which the legislative power defined in section 14 has been exercised appear in many of our decisions, among which are the following: *Harriss v. Wright,* 121 N. C., 172; *Audit Co. v. McKenzie,* 147 N. C., 462; *Trustees v. Webb,* 155 N. C., 379; *Comrs. v. Comrs.,* 165 N. C., 632; *Woodall v. Highway Com.,* 176 N. C., 377.

It is settled by the decisions as well as the cited sections of the Constitution that the plaintiffs had no vested property or contract right to the office to which they had been elected of which they could not be deprived by the Legislature. *Mial v. Ellington,* 134 N. C., 131, overruling *Hoke v. Henderson,* 15 N. C., 1. The complaint, it is true, assails the statute in question on the ground that the plaintiffs occupied a constitutional office which the Legislature could not abolish, but counsel for the appellees admitted in their argument here that the office is one which may be abolished at the legislative will, and that the officers may be removed and their duties delegated to others.

Admitting this, the plaintiffs say, however, that the act vested in the board of managers all the powers theretofore possessed by the board of commissioners, and that it is void because, as admitted, it was not passed in compliance with Article II, sec. 14, of the Constitution. This section is as follows:

Sec. 14. No law shall be passed to raise money on the credit of the State, or to pledge the faith of the State, directly or indirectly, for the

payment of any debt, or to impose any tax upon the people of the State, or allow the counties, cities, or towns to do so, unless the bill for the purpose shall have been read three several times in each house of the General Assembly and passed three several readings, which readings shall have been on three different days, and agreed to by each house respectively, and unless the yeas and nays on the second and third readings of the bill shall have been entered on the journal. .

More particularly stated, the argument of the plaintiffs is based on the proposition that the object of the act is to raise revenue for the county; that, while the word "taxes" does not appear · in the act, the commissioners were given power to levy, in like manner with the State taxes, all necessary taxes for county purposes (C. S., 1297 (2), Revenue Act, sec. 2; and that the managers for the county, succeeding to the duties of the commissioners, are necessarily invested with like power. This position raises the question whether the power of taxation was bestowed upon the board of commissioners as an original corporate entity, or whether it was vested in the county as a body politic and corporate to be exercised by the board of commissioners as a county agency or instrumentality provided by legislative enactment. If the latter is the correct position a mere change in the taxing instrumentality would not necessarily impair or affect the original grant of the power to tax; and if the power to tax remains unimpaired in the county the act in question providing for a mere change of the instrumentality need not have been passed in compliance with the formalities prescribed by Article II, sec. 14, of the Constitution. This seems to be evident from the article itself. It provides, as, we have seen, that no law shall be passed to *impose any tax* or allow the counties, cities, or towns to do so unless the specified conditions are complied with; but it has no reference to the officers who impose the tax. The abolition of one board by whom the tax is to be levied and the substitution of another who is to perform the identical office is not the imposition of a tax within the meaning of this section. See *Colton Mills v. Waxhaw,* 130 N. C., 293; *Lutterloh v. Fayetteville,* 149 N. C., 65.

There is no suggestion that the body of our statute law (Consolidated Statutes, including the Revenue Act) was not enacted in conformity with the Constitution. As, therefore, the power of taxation cannot be impeached, it is material to determine where such power resides—whether in the county or in the board of commissioners.

As a general rule, the existence of a county may be regarded as continual or perpetual, notwithstanding any change in the officers by whom its corporate functions are to be exercised. Indeed, its functions can be performed only by some kind of agency or instrumentality, as the business of all corporations is conducted by its officers or agents. Every

county is a body politic and corporate, and has the powers prescribed by statute and those necessarily implied by law, and no others; and these powers are exercised by the board of commissioners, or in pursuance of a resolution adopted by them. C. S., 1290. The board of commissioners, then, is an instrumentality or *quasi* agency appointed to supervise and control the institutions and finances of the county in which as a body corporate the original grant of power resides. This seems to be apparent from the statutes defining its powers. It may borrow money for necessary expenses, but the debt is that of the county; with the approval of the General Assembly it may submit to a vote of the qualified electors a proposition to loan the credit of the county; it may make orders respecting county property; and it may provide for the maintenance of the poor at the expense of the county. It may discharge a number of other statutory duties; but its powers are exercised on behalf of the county and its acts are the acts of the county. The provision in C. S., 1297, that "the boards of commissioners of the several counties shall have power . . . to levy, in like manner with the State taxes, the necessary taxes for county purposes"; and the provision in the Revenue Act, sec. 2, that "there shall be levied by the board of commissioners in each county a tax on each taxable poll," must be construed in the light of the restriction set forth in Article VII, sec. 2, of the Constitution. The entire trend of legislation enacted in pursuance of this section of the Constitution indicates the exercise of powers delegated for specific purposes to an instrumentality or *quasi* agency of the county. The taxes thus authorized are really levied by the county through the instrumentality of the board of commissioners. *Fountain v. Pitt,* 171 N. C., 113; *Wilson v. Holding,* 170 N. C., 352; *Halford v. Senter,* 169 N. C., 546; *Buck v. Comrs.,* 159 N. C., 335; *Cotton Mills v. Comrs.,* 108 N. C., 678; 15 C. J., 456 (102).

In our opinion, the logical conclusion is that the board of managers was substituted for the board of commissioners by constitutional authority (Art. VII, sec. 14), and that the act under consideration is not invalidated by a failure to observe the formalities laid down in Art. II, sec. 14.

It was urged on behalf of the plaintiffs that the act considered most favorably for the defendants is a material amendment of the law conferring the original power to tax, and upon the admitted facts is, therefore, null and void. It is true that a material amendment to a statute authorizing the imposition of a tax must conform to the requirements of Article II, sec. 14, of the Constitution. *Road Com. v. Comrs.,* 178 N. C., 61; *Guire v. Comrs.,* 177 N. C., 516; *Claywell v. Comrs.,* 173 N. C., 657; *Russell v. Troy,* 159 N. C., 366. It is also true that an

amendment will not ordinarily be deemed material unless it purports to levy a tax or to create or increase a debt, or to change the rate of interest or the time of payment, or otherwise to broaden the scope of the amended act, or materially to affect its financial features. *Glenn v. Wray,* 126 N. C., 730; *Brown v. Stewart,* 134 N. C., 357; *Comrs. v. Stafford,* 138 N. C., 453; *Bank v. Lacy,* 151 N. C., 3; *Gregg v. Comrs.,* 162 N. C., 479; *Brown v. Comrs.,* 173 N. C., 598; *Wagstaff v. Highway Comm.,* 177 N. C., 354. In our interpretation of the statutes, none of these provisions appears in or is directly or indirectly made a part of the act before us, but simply the substitution of a new board by whom authorized taxes may be levied.

The judgment of the Superior Court is
Reversed.